Filing # 131217696 E-Filed 07/22/2021 02:24:11 PM

IN THE COUNTY COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA
SMALL CLAIMS DIVISION

| | |
|---|---|
| **Stephanie Vega,** | |
| *Plaintiff,* | Case No.: _____ |
| v. | |
| **Radius Global Solutions, LLC,** *and* **Trans Union, LLC,** | Ad Damnum: **$6,000 + Atty Fees & Costs** |
| *Defendants.* | **JURY TRIAL DEMANDED** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Stephanie Vega**, ("**Ms. Vega**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **Radius Global Solutions, LLC** ("**Radius**"), and **Trans Union, LLC** ("**Trans Union**") stating as follows:

### PRELIMINARY STATEMENT

1. This is an action brought by Ms. Vega against Radius Global for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**") and the *Florida Consumer Collection Practices Act*, Section 559.55, *et seq.*, Florida Statutes ("**FCCPA**"), and against Trans Union for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**").

### JURISDICTION AND VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the FCRA, 15 U.S.C. § 1681p, the FCCPA, Section 559.77, Florida Statutes, and Section 34.01, Florida Statutes.

3. The Defendants are subject to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes.

4. Venue is proper in Polk County, Florida, pursuant to Section 47.051, Florida Statutes, because the acts complained of were committed and/or caused by the Defendant within Polk County.

## PARTIES

5. **Ms. Vega** is a natural person residing in Auburndale, Polk County, Florida, and a *Consumer* as defined by the FDCPA, 15 U.S.C. § 1692a(3) and the FCCPA, Section 559.55(8), Florida Statutes.

6. **Radius** is a Minnesota foreign limited liability company with a primary business address of **7831 Glenroy Road, Suite 250, Edna, Minnesota 55439**.

7. Radius is registered to conduct business in the State of Florida, where its Registered Agent is **CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324**.

8. Radius is registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency* ("**CCA**").

9. Radius is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. §1692a(6), and the FCCPA, Section 559.55(7), Florida Statutes, in that it uses postal mail, and/or another instrumentality of commerce, interstate and within the state of Florida, for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

10. **Trans Union** is a Delaware limited liability company, with a primary business address of 555 West Adams St., Chicago, IL 60661.

11. Trans Union is registered to conduct business in the State of Florida, where its registered agent is The Prentice-Hall Corporation System, Inc., 1201 Hays St., Tallahassee, FL 32301.

12. Trans Union is a nationwide *Consumer Reporting Agency* within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, or on a cooperative nonprofit basis, it regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, while using means or facilities of interstate commerce, specifically the U.S. mail and internet, for the purpose of preparing or furnishing consumer reports.

## FACTUAL ALLEGATIONS
### The Debt

13. Sometime prior to 2018, Ms. Vega received medical treatment from Osprey Emergency Physicians ("**Osprey**").

14. Shortly thereafter, Osprey claimed that Ms. Vega incurred an unpaid balance for charges allegedly not covered by her medical insurance, in the amount of $829 (the "**Debt**").

15. The alleged Debt arose from goods that were primarily for family, personal, or household purposes, specifically medical treatment, and meets the definitions of *Debt* under the FDCPA, 15 U.S.C. § 1692a(5), and the FCCPA, Section 559.55(6), Florida Statutes.

16. Around December 2020, Osprey assigned, or otherwise transferred the Debt to Credit Management Control, Inc. ("**Credit Management**"), a Wisconsin-based debt collector.

17. In December 2020, Credit Management began reporting the Debt, monthly, to the major Credit Reporting Agencies ("**CRAs**"), including Trans Union.

### Ms. Vega's Dispute of the Debt – Credit Management Tradeline

18. On or around February 3, 2021, Ms. Vega requested and obtained a copy of her consumer credit disclosure from Trans Union. **SEE PLAINTIFF'S EXHIBIT A.**

19. Ms. Vega saw the Credit Management Tradeline reporting to her credit and on that day, disputed Credit Management's reporting of the account to Trans Union.

20. Trans Union, upon receipt of Ms. Vega's dispute, sent Credit Management an Automated Consumer Dispute Verification ("**ACDV**") form though an online platform known as e-OSCAR and asked Credit Management to make a reasonable investigation into the dispute.

21. Credit Management thus knew that Ms. Vega disputed the Debt, at least as early as February 2021.

22. Credit Management, in response to Ms. Vega's dispute, responded to the ACDV that the accuracy of the reported information *could not be* verified and thus requested that Trans Union delete its tradeline.

23. Trans Union thereafter ceased reporting the Credit Management tradeline.

24. A debt collector who becomes aware a debt is disputed, is required to include notice of dispute in all subsequent communications in connection with the collection of that debt. *See* 15 U.S.C. § 1692e(8).

### Disputed, Deleted Debt Re-Reported by Radius

25. On information and belief, Credit Management thereafter returned the Debt to Osprey, noting that Ms. Vega disputed the account.

26. In February 2021, Osprey assigned the Debt to another debt collector – Radius.

27. On information and belief, Osprey informed Radius of Ms. Vega's existing dispute.

28. In April 2021, Radius, in turn, began reporting the Debt monthly to Trans Union and Experian. **SEE PLAINTIFF'S EXHIBITS B & C.**

29. Radius reported the same balance, account status, DOFD, original creditor, and ECOA code as Credit Management.

30. The only difference in the data was the "date assigned" for collection, "date of status" of the account being considered "in collection," and the "date first reported."

31. Radius failed to indicate that the Debt was disputed in its reports concerning the Debt. *Id.*

32. The tradeline thus continued to appear on Ms. Vega's credit reports as a "non-disputed" debt.

33. Radius is a large debt collector and receives a considerable number of disputes concerning medical debts it reports to CRAs.

34. Radius knew, when it received a portfolio of charged-off debts for collection from Osprey in February 2021, which included Ms. Vega's purported Debt, that it was not the first collection agency to be assigned the account.

35. Radius this knew – or reasonably should have known – a considerable number of the accounts had been previously disputed and had to be reported as such.

36. On information and belief, Radius has no policies in place to ask creditors, like Osprey, who place debt for collection with it, whether the creditor was aware of any prior disputes by the relevant consumers.

### Trans Union's Re-Insertion of Previously Deleted Information

37. Pursuant to 15 U.S.C. § 1681i(a)(5)(C), Trans Union was required to "maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted...."

38. Radius Global reported information which had previously been deleted in response to a dispute from Ms. Vega, changing only the "date assigned" for collection, the "date of status" of the account being considered "in collection," and the "date first reported."

39. On information and belief, Trans Union's systems are programmed to consider information about a particular debt to be "different" so long as the debt collector reporting the debt is a different entity.

40. However, changing the name of the debt collector does not change the underlying account.

41. Had Trans Union used reasonable procedures, its systems would have flagged the previously-deleted data and blocked it from being reinserted.

42. Additionally, on information and belief, Trans Union did not verify that the Credit Management account, which they had previously deleted, could now be verified as accurate by Radius Global, contrary to the requirements of 15 U.S.C. § 1681i(a)(5)(B)(i).

43. Even assuming, arguendo, that Trans Union had obtained the FCRA-mandated verification of accuracy to reinsert the Radius Global tradeline, it would still be inherently unreasonable to include information from a furnisher of data when that same information had been deleted in response to an ACDV, indicating that the information could not be confirmed as accurate.

44. Trans Union also failed to mail written notice to Ms. Vega stating that they were reinserting previously-deleted information, disclosing the business name and address of the furnisher of information making such verification, and explaining to Ms. Vega that she has the right to add a statement disputing the accuracy of the supposed Debt.

45. As a result of the Defendants' actions, disputed unverifiable, previously-deleted information was reinserted into Ms. Vegas' credit reports, without the legally-required notice of dispute.

46. Radius' failure to disclose that the Debt was disputed, and Trans Union's re-insertion of the account, materially damaged Ms. Vega's credit scores.

47. The Defendants' conduct likewise caused Ms. Vega to suffer damage to her reputation and emotional distress in having to take time to re-dispute an account which Ms. Vega thought was resolved.

48. Ms. Vega also spent time and money attempting to force the Defendants' to comply with their statutory obligations and in procuring counsel.

49. The failure to properly report a disputed debt as disputed creates a concrete injury-in-fact because the failure to disclose this information affects credit scores, meaning Ms. Vega suffered "a real risk of financial harm caused by an inaccurate credit rating." *Evans v. Portfolio Recovery Associates*, 889 F. 3d 337, 345 (7th Cir 2018).

### Radius Makes Unauthorized Disclosures of Protected Information to Third Party

50. Radius, in an effort to collect the Debt from Ms. Vega, mailed Ms. Vega multiple collection letters, including one sent after assignment of the Debt in February 2021.

51. However, rather than prepare and mail the February 2021 collection letter on its own, Radius sent information to a commercial mail house located in Oaks, Pennsylvania (the "**Mail House**").

52. Radius disclosed highly personal information regarding Ms. Vega and the Debt to the Mail House, including:

- The nature of services rendered and the fact that the Debt concerned medical treatment;
- Ms. Vega's status as a debtor; and,
- The amount Ms. Vega supposedly owed.

53. The Mail House then populated some, or all, of this information into a pre-written template, printed, and mailed the letter to Ms. Vega's residence in Florida.

54. The term *Communication* is defined in the FDCPA, 15 U.S.C. § 1692a(3), as "the conveying of information regarding a debt directly or indirectly to any person through any medium."

55. Radius sent an electronic file containing information about Ms. Vega's purported debt to the Mail House.

56. Radius thus "communicated" with the Mail House as pursuant to 15 U.S.C. § 1692a(3).

57. Radius' communication to the Mail House involved disclosure of the Debt to a third-party with instructions to produce a collection letter and mail it to Ms. Vega, the consumer, with the objective that the correspondence would motivate the consumer to pay some, or all, of the alleged Debt.

58. Radius' communication to the Mail House was thus in connection with the collection of the Debt.

59. The Mail House is a distinct entity not owned by Radius.

60. The Mail House is not a consumer reporting agency as referenced in 15 U.S.C. § 1692c(b).

61. The Mail House is not an attorney as referenced in 15 U.S.C. § 1692c(b).

62. Ms. Vega never consented to having her personal and confidential information, concerning the Debt or otherwise, shared with *any* mail house.

63. 15 U.S.C. § 1692c(b) states:

> "Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express

permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the <u>consumer</u>, his <u>attorney</u>, a <u>consumer reporting agency</u> if otherwise permitted by law, the <u>creditor</u>, the <u>attorney of the creditor</u>, or the <u>attorney of the debt collector</u>." (emphasis added).

64. The mail house used by Radius as part of its debt collection effort against Ms. Vega does not fall within any of the categories listed within 15 U.S.C. § 1692c(b).

65. Due to Radius' communication to the Mail House, information about Ms. Vega, including her name, the nature of the underlying debt, the original creditor's name, current creditor's name, and the amount she supposedly owes as a result, are all within possession of a third party not expressly listed within 15 U.S.C. § 1692c(b).

66. If a debt collector "conveys information regarding the debt to a third party – informs the third party that the debt exists or provides information about the details of the debt – then the debtor may well be harmed by the spread of this information." *Brown v. Van Ru Credit Corp.*, 804 F.3d 740, 743 (6th Cir. 2015).

67. Communications from debt collectors to mail houses are not exempt from the provisions of 1692c(b) and are "in connection with" the collection of a debt. See *Hunstein v. Preferred Collection & Mgmt. Servs.*, No. 8:19-cv-983 (11th Cir. April 21, 2021).

68. Radius devised this strategy of communicating to a third-party mail house so that it could churn out more collection letters than if it kept all of the work "in house."

69. This mail house strategy allowed Radius to generate more profit and gain an advantage over competitors.

70. In reckless pursuit of these business advantages, Radius disregarded the known, negative effects that disclosing sensitive personal information to an unauthorized third party would have on a consumer.

71. Radius' unauthorized and prohibited communications caused Ms. Vega, a consumer who highly values her privacy, significant emotional distress since her confidential, legally protected medical and personal information had been unlawfully disseminated to third parties.

### Radius Reports False 'Date of Status'

72. The "date of status" of a collection account indicates the date an account was first designated to be "in collection." *Cf. Baker v. Capital One Bank*, No. CV 04–1192 PHX–NVW, 2006 WL 2523440, at *4–*5 (D.Ariz. Aug. 29, 2006).

73. Radius' report of the Debt to Experian indicated a "date of status" of February 2021, thus falsely implies that the account was first referred for collection in February 2021, even though the true date was December 2020. **SEE PLAINTIFF'S EXHIBIT C.**

74. The "date of status" is a key point of data evaluated by many versions of FICO® credit scores, including FICO Model 2, used by Experian and Trans Union for mortgage evaluations. The more recent the "date of status," the more adverse the information is factored against the consumer. *See Toliver v. Experian Info. Solutions, Inc.*, 973 F. Supp. 2d 707 (S.D. Tex. 2013).

75. Further, "(a) reasonable jury could find that the 'Date of status' entry was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id.* (quoting *Sepulvado v. CSC Credit Services, Inc.*, 158 F.3d 890 (5th Cir. 1998)).

### Radius Reports False 'Date Opened"

76. Radius reported to Experian that the Osprey account had a "Date Opened" of February 2021. **SEE PLAINTIFF'S EXHIBIT C.**

77. Likewise, Radius reported to Trans Union that the Osprey account had a "Date Opened" of February 4, 2021. **SEE PLAINTIFF'S EXHIBIT B.**

78. Radius' reported information is false. Ms. Vega's medical services were rendered with Osprey in 2018.

79. Trans Union was aware from Credit Management's prior reporting that the February 2021 "date of status" for the Debt was not accurate, as the Debt had been reported with a status of "in collection" at least since December 2020.

80. Trans Union nonetheless accepted Radius' reporting without question and re-incorporated the accounts into Ms. Vega's data file and included the tradeline in reports sold concerning her.

81. A reasonable and prudent reader of Ms. Vega's credit report would infer that an account indicating a balance owed to Osprey reflecting a "Date Opened" of February 2021 means – as the plain language implies – the account was opened with Osprey in February 2021. *Toliver*, 973 F. Supp. 2d 707, 721 ("Here, there is no language to indicate that 'Date opened' means anything other than the date that the consumer opened the account, as it does for the majority of accounts on (Plaintiff's) credit report.... (A) reasonable jury could find that the "Date opened" entry was misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.") (Internal quotations omitted).

82. As a result, Ms. Vega has suffered damages including loss of credit and damage to her reputation.

83. Ms. Vega has hired the aforementioned law firm to represent her in this matter and is obligated to pay its reasonable fees and / or has assigned her right to attorney fees and costs to the law firm.

## COUNT I
## VIOLATIONS OF THE FDCPA - *Radius*

84. Ms. Vega adopts and incorporates paragraphs 1 – 83 as if fully stated herein.

85. Radius violated **15 U.S.C. § 1692c(b)** when it disclosed information about Ms. Vega's purported Osprey debt to an unauthorized third-party mail house and the employees of that mail house in connection with the collection of the Debt.

86. Radius violated **15 U.S.C. § 1692e and 1692e(10)** when Radius made false and/or misleading representations in an attempt to collect the Debt, when it reported the Debt to Experian and Trans Union, claiming the "status date" of the Debt (e.g., the date which the account became a collection) was February 2021, when it was December 2020 or earlier, that the account had been "first reported" as of April 2021, when it had been reported since December 2020 or earlier, and that the Debt was not disputed, when it was disputed.

87. Radius violated **15 U.S.C. § 1692e(8)** when Radius communicated, to Experian and Trans Union, credit information known to be false, specifically, the "status date" of the Debt (e.g., the date which the account became a collection) was February 2021, when it was December 2020 or earlier, that the account had been "first reported" as of April 2021, when it had been reported since December 2020 or earlier, and that the Debt was not disputed, when it was disputed.

88. Radius violated **15 U.S.C. § 1692e(8)** when Radius communicated credit information which was known to be disputed, or which should have been known to be disputed, without disclosure of dispute, in its reports to Experian and Trans Union in April 2021.

89. Radius violated **15 U.S.C. § 1692e(2)(a)** when Radius made false and misleading representations about the character, amount and legal status of the Debt when it falsely claimed the "status date" of the Debt (e.g., the date which the account became a collection) was February 2021, when it was December 2020 or earlier, that the account had been "first reported" as of April


2020, when it had been reported since December 2020 or earlier, and that the Debt was not disputed, when it was disputed.

90. Radius' actions render it liable for the above-stated violations of the FDCPA, and Ms. Vega is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

**WHEREFORE,** Ms. Vega respectfully requests that this Honorable Court enter judgment against Radius and for him as follows:

a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATION OF THE FCCPA - *Radius*

91. Ms. Vega adopts and incorporates paragraphs 1 – 83 as if fully stated herein.

92. Radius violated **Section 559.72(5), Florida Statutes**, when it disclosed to the Mail House, a third party, information that would affect Ms. Vega's reputation, specifically details about her personal financial and medical issues, and purported unpaid bills. Radius was aware that there was no legitimate business need to convey this information, since Radius could easily have prepared and mailed the letter itself without any need to disclose the information to a third party.

93. Instead, Radius *intentionally decided* to disclose this information to the Mail House as part of its debt collection effort against Ms. Vega because it allowed Radius to gain a competitive advantage over the competition through increased profit margins.

94. Radius' conduct renders it liable for the above-stated violations of the FCCPA, and Ms. Vega is therefore entitled to statutory damages not to exceed $1,000 as well as other relief.

**WHEREFORE,** Ms. Vega respectfully requests this Honorable Court enter judgment against Radius, for:

a. Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

b. Unspecified actual damages pursuant to Section 559.77(2), Florida Statutes;

c. Injunctive relief preventing Radius from making any further communications to the unauthorized third party when attempting to collect a consumer debt.

d. Reasonable costs and attorneys' fees pursuant to Section 559.77(2), Florida Statutes; and,

e. Such other relief that this Court deems just and proper.

## COUNT III
## VIOLATIONS OF THE FCRA – *Trans Union*

95. Ms. Vega adopts and incorporates paragraphs 1 – 83 as if fully stated herein.

96. Trans Union violated 15 U.S.C. § **1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy by including false and inaccurate information in Ms. Vega's credit reports, on at least three occasions, when it compiled and produced reports regarding Ms. Vega which included the Radius tradeline, therein falsely indicating that the account was first opened in February 2021.

97. Trans Union violated 15 U.S.C. § **1681i(a)(5)(B)(i)** when it failed to obtain certification of accuracy of previously-deleted information, specifically, the disputed Radius tradeline, and reinserted this information into Ms. Vega's credit file without verification.

98. Trans Union violated 15 U.S.C. § **1681i(a)(5)(B)(2)** when it failed to provide written notice that it was reinserting previously-deleted information into Ms. Vegas' credit file, when it re-inserted the disputed Radius tradeline without notice to Ms. Vega.

99. Trans Union violated 15 U.S.C. § **1681i(a)(5)(B)(2i)(I)** when it failed to provide any written notice to Ms. Vega that it was reinserting previously-deleted information, when it re-inserted the disputed Radius tradeline without notice to Ms. Vega.

100. Trans Union violated 15 U.S.C. § **1681i(a)(5)(B)(2i)(2)** in that it failed to provide the business name and address of the entity associated with the reinsertion of the previously-deleted information.

101. Trans Union violated 15 U.S.C. § **1681i(a)(5)(B)(2i)(2I)** when it failed to provide written notice that Ms. Vega had the right to have a statement of dispute included in his file regarding the re-inserted tradeline.

102. Trans Union's conduct was willful and intentional, or, alternately, was done with a reckless disregard for a consumer's rights under the FCRA to have reports produced with maximum possible accuracy and to prevent the re-insertion of previously-deleted tradelines.

103. Trans Union's policies could reasonably be foreseen to cause harm to Ms. Vega.

104. Trans Union's intentional conduct warrants an award of punitive damages pursuant to 15 U.S.C. § 1681n(a)(2).

105. Alternatively, Trans Union's actions were the result of negligence, and Ms. Vega is entitled to recover under 15 U.S.C. § 1681o.

WHEREFORE, Ms. Vega respectfully requests this Honorable Court enter judgment against Trans Union, and for her, for:

a. The greater of statutory damages of $1,000 per incident (for a total of at least $4,000), pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1) or Ms. Vega's actual damages for loss of credit opportunities and related economic and non-economic injuries;

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. Vega demands a jury trial on all issues so triable.

Respectfully submitted on July 22, 2021 by:

**SERAPH LEGAL, P. A.**

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar # 119168
BGeiger@seraphlegal.com
1614 N. 19th St.
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Attorney for Plaintiff*

## ATTACHED EXHIBITS LIST

A     Ms. Vega's Trans Union Consumer Disclosure, February 3, 2021 – Credit Management Tradeline
B     Ms. Vega's Trans Union Consumer Disclosure, May 16, 2021 – Radius Tradeline
C     Ms. Vega's Experian Consumer Disclosure, May 16, 2021 – Radius Tradeline

# EXHIBIT A
## Ms. Vega's Trans Union Consumer Disclosure, February 3, 2021 – Credit Management Tradeline

---

**CREDIT MANAGEMENT CNTRL**

**Dispute**

**Address**
1263 Main Street, suite 212 GREEN BAY, WI 54202

**Phone**
(866) 844-2358

**Date Opened**
12/17/2020

**Responsibility**
Individual Account

**Account Type**
Open Account

**Loan Type**
COLLECTION AGENCY/ATTORNEY

**Balance**
$829

**Date Updated**
01/26/2021

**High Balance**
$829

**Original Creditor**
OSPREY EMERGENCY PHY

**Past Due**
$829

**Pay Status**
>In Collection<

**Estimated month and year this item will be removed**
03/2025

**Remarks**
>PLACED FOR COLLECTION<

# EXHIBIT B
## Ms. Vega's Trans Union Consumer Disclosure, May 16, 2021 - Radius Tradeline

---

**RADIUS GLOBAL SOLUTIONS LLC**

<span style="background:black">▇▇▇</span>

Dispute

Address
7831 GLENROY RD,SUITE 250A
MINNEAPOLIS, MN 55439

Phone
(844) 802-3990

Date Opened
02/04/2021

Responsibility
Individual Account

f 50   5/16/2021, 3:

ute Categories    https://service.transunion.com/dss/disputeCategorie

Account Type
Open Account

Loan Type
COLLECTION AGENCY/ATTORNEY

Balance
$829

Date Updated
05/08/2021

High Balance
$829

Original Creditor
OSPREY EMERGENCY PHYSICIANS

Past Due
$829

Pay Status
>In Collection<

Estimated month and year this item will be removed
06/2025

Remarks
>PLACED FOR COLLECTION<

# EXHIBIT C
## Ms. Vega's Experian Consumer Disclosure, May 21, 2021 – Radius Tradeline

5/16/2021  Experian - Access your credit report

STEPHANIE VEGA | Report number ▓▓▓▓ | May 16, 2021 | Print | Close window

**Print your report**

Below is all the information currently in your credit report. The payment history guide and common questions will help explain your credit information. Print this page or write down your report number for future access.

| Account name | Account number | Recent balance | Date opened | Status |
|---|---|---|---|---|
| RADIUS GLOBAL SOLUTIONS | ▓▓▓▓ | $829 as of 04/25/2021 | 02/2021 | Collection account. $829 past due as of Apr 2021. |
| 7831 GLENROY RD STE 250 EDINA, MN 55439 | Type Collection | Credit limit or original amount | Date of status 02/2021 | |

5/23

5/16/2021  Experian - Access your credit report

844 802 3990
Address identification number 0076222893

Original creditor
OSPREY EMERGENCY PHYSICIANS

Terms 1 Months
On record until Apr 2025

$829
High balance $0
Monthly payment $0
Recent payment amount $0

First reported 04/2021
Responsibility Individual

**Account history**

2021
Apr
C

Collection as of Apr 2021, Apr 2021